IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-01767-PSF-MEH

CARL WILLIAM PURSLEY, JR.,

        Applicant,

vs.

AL ESTEP, Warden of L.C.F., and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

        Respondents.

_____

## RECOMMENDATION FOR
## DISMISSAL OF APPLICATION
_____

**Entered by Michael E. Hegarty, United States Magistrate Judge**

Applicant has pending before this Court an Application for a Writ of Habeas Corpus Pursuant

to 28 U.S.C. § 2254 ("Application") (Docket #1).  Respondents have filed their Answer (Docket #7),

together with their Exhibits to Respondents' Answer (Docket #8).  Applicant has submitted his Reply

(Docket #11) and Supplement to Applicant's Reply (Docket #19)  Under the provisions of 28 U.S.C.

§ 636(b)(1) and Fed.R.Civ.P. 72, this matter has been referred to me for Recommendation on

dispositive matters and for ruling on nondispositive matters.  Based on the record contained herein,

I **recommend** that the Application be denied and that this matter be dismissed, with prejudice.

The parties are advised that they shall have ten (10) days after service hereof to serve and file

any written objections in order to obtain reconsideration by the District Judge to whom this case is

assigned.  FED. R. CIV. P. 72.  The party filing objections must specifically identify those findings or

recommendations to which the objections are being made.  The District Court need not consider

frivolous, conclusive or general objections.  A party's failure to file such written objections to

proposed findings and recommendations contained in this report may bar the party from a de novo

determination by the District Judge of the proposed findings and recommendations. *United States*

*v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file

written objections to the proposed findings and recommendations within ten (10) days after being

served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate

Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985);

*Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d

1159, 1164 (10th Cir. 1986).

## **FACTS**

Applicant is a state prisoner in Colorado, and he has filed a *pro se* Application challenging his

Colorado conviction on jury verdict for one count of second degree murder, one count of attempted

first degree murder, and two habitual criminal counts. The basic factual background underlying the

conviction is stated by the Colorado Court of Appeals as follows:

> Following a lengthy jury trial, the [Applicant] was convicted of attempted first degree
> murder for trying to cut the throat of his estranged wife and of second degree murder
> for cutting the throat of, and inflicting lethal blows to the head of, another woman,
> who was in the same apartment as his wife. The jury also found him guilty of two
> counts alleging a crime of violence and of two habitual criminal counts.

EXHIBITS TO RESPONDENTS' ANSWER, Docket #8, Exh. D.

Applicant directly appealed his conviction, arguing that numerous errors and omissions were

committed by the trial court, the prosecution and his counsel. *Id*. at Exh. A. The Colorado Court

of Appeals rejected the majority of Applicant's claims, but agreed with an argument he made that the

jury instruction given during trial on first degree murder was improper. *Id*. at Exh. D. The state

appellate court vacated the judgment of conviction on that count, and remanded for further

proceedings, giving the prosecution the option of either re-trying the Applicant on the charge of first degree murder or resentencing him for the lesser crime of attempted second degree murder. *Id.* On remand, the Applicant was resentenced on a charge of attempted second degree murder. *Id.* at Exh. G. Thereafter, the Applicant sought postconviction relief under the provisions of Colo.R.Crim.P 35, but was unsuccessful in the state courts. *Id.* at Exh. I and K.

On September 13, 2005, the Applicant filed his Application in this Court, seeking federal habeas relief. In the Application, the Applicant asserts eleven claims for relief, including two with multiple subparts. As summarized by the Respondents, and undisputed by the Applicant, these claims are as follows:

1. [Applicant's] constitutional right to present a defense was violated by the exclusion of expert testimony from linguistics expert Dr. Roger W. Shuy on the grounds of a belated endorsement.

2. [Applicant] was denied his right to testify by defense counsel prohibiting him from testifying on redirect.

3. [Applicant] was denied due process by the trial court's decision to permit an instruction on the lesser-included offense of second-degree murder and by entering judgment on attempted second-degree murder after [Applicant's] conviction for attempted first-degree murder was vacated on appeal.

4. [Applicant's] right to choice of counsel was violated by the endorsement of defense counsel Terry Perlet as a possible witness.

5. [Applicant's] right to due process was violated by the admission of evidence of [Applicant's] prior Florida assault under CRE 404(b).

6. [Applicant] was denied his right to due process and an impartial jury by prosecutorial misconduct: (a) failing to collect and preserve a toxicology analysis; (b) failing to preserve bloodstains; (c) failing to disclose evidence of the Federal Bureau of Investigation's analysis of the 911 tape; (d) failing to disclose a psychological evaluation of victim Ann Pursley; (e) endorsing defense counsel as a witness for the sole purpose of disqualifying counsel of choice; (f) injecting damning innuendos throughout the trial; (g) knowingly

misrepresenting the evidence; (h) eliciting evidence which had been previously suppressed by the trial court; (i) engaging in impermissible rebuttal tactics; (j) referring to the theory of defense as a lie during closing arguments; and (k) using [Applicant's] post-arrest silence as an inference of guilt.

7.      [Applicant] was denied his right to effective assistance of counsel because: (a) counsel failed to seek expert assistance regarding bloodstain pattern analysis; (b) counsel failed to seek expert assistance in the area of hair/fiber analysis; (c) counsel failed to timely investigate the need for and availability of an expert in the field of voice identification; (d) counsel failed to seek expert assistance in the field of medical pathology; (e) counsel failed to seek suppression of certain comments on the 911 transcripts; (f) counsel failed to object to allowing the jury unrestricted access to the 911 tapes; (g) counsel submitted a transcript of the 911 tape that had been prepared by a person who was not an expert in voice identification; (h) trial counsel did not review the 911 tape and transcript before it was introduced as evidence[;] (i) counsel did not conduct effective cross-examination; (j) counsel failed to object to several deficient jury instructions; (k) counsel failed to object to the prosecutor's misconduct; (l) counsel made references to and elicited evidence of [Applicant's] prior bad acts; (m) counsel failed to offer surrebuttal evidence; (n) appellate counsel improperly raised the issue of the removal of Mr. Perlet as defense counsel; (o) appellate counsel failed to raise the trial court's error in instructing on second-degree murder; (p) after remand, counsel failed to object to the prosecution's request to enter a conviction for attempted second-degree murder; and (q) counsel failed to investigate the date of conviction used for the habitual offender charge.

8.      [Applicant] was denied his right to confrontation resulting from prosecutorial misconduct, erroneous court rulings, and ineffective assistance of counsel.

9.      [Applicant] was denied due process by the trial court's failure to *sua sponte* suppress certain comments on the 911 tape.

10.     [Applicant] was denied his right to a fair trial due to cumulative error.

11.     [Applicant's] . . . rights to due process, compulsory process, and equal protection were denied by the trial court's failure to provide necessary services both at trial and during postconviction proceedings.

ANSWER, Docket #7, p. 3-4.

In their Answer to the allegations, the Respondents argue that the Application is untimely filed under the one-year limitations period applicable to the Application under the Antiterrorism and Effective Death Penalty Act ("AEDPA").   Further, the Respondents contend that except for Claims One, Four and Five of the Application,  the remainder of Applicant's claims were not exhausted in the state courts.  Respondents indicate that any attempt by the Applicant to return to the state courts to exhaust these claims would be futile, because he would be barred under state law, and therefore, the claims are procedurally defaulted, precluding review in this Court.  The Respondents finally argue that the three claims which appear to be exhausted lack any merit, but even if they did have merit, they would constitute harmless error.   Applicant strenuously objects to the arguments of the Respondents in his Reply (Docket #11) and Supplement to Applicant's Reply (Docket #19).

Applicant proceeds in this action *pro se*.  As a *pro se* litigant, Applicant's filings are entitled to liberal construction by this Court.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be the *pro se* litigant's advocate.  *Hall*, 935 F.2d at 1110.

## DISCUSSION

### I.    Statute of Limitations.

The AEDPA establishes a one-year statute of limitations for habeas corpus applications filed by state prisoners.  *See* 28 U.S.C. § 2244(d)(1).  The limitation period runs from the latest of:

(A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

      (C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

      (D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

If a prisoner's conviction became final before April 24, 1996 (the effective date of the AEDPA), the one-year limitations period is deemed to have commenced on April 24, 1996. *See Hoggro v. Boone*, 150 F.3d 1223, 1225 (10th Cir. 1998). Accordingly, a prisoner in this situation is given until April 24, 1997 (one year after the AEDPA's effective date) to file his Application. *See United States v. Hurst*, 322 F.3d 1256, 1260-61 (10th Cir. 2003) (prisoners whose convictions became final on or before April 24, 1996, must file their habeas corpus applications on or before April 24, 1997, in order to avoid the AEDPA's statute of limitations). This one-year limitations period is, however, tolled during the time in which a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" 28 U.S.C. § 2244(d)(2). "State procedural law must govern when determining whether a state petition is 'properly filed.'" *Adams v. LeMaster*, 223 F.3d 1177, 1181 (10th Cir. 2000), *cert. denied*, 531 U.S. 1195 (2001).

Respondents calculate that Applicant's conviction became final on January 28, 1996, so that the limitations period for his claims did not begin to run until April 1996, but argue that the limitations period expired without being tolled because the Applicant did not file state postconviction proceedings until August 20, 1998. Applicant counters the Respondents' argument by indicating that because he was resentenced on February 22, 1996, his sentence did not become final until June 22,

1996. In this regard, the Applicant relies on the case of *People v. Lyons*, 618 P.2d 673 (Colo. Ct. App. 1980), for the proposition that "a conviction is final 120-days after the imposition of sentence when that conviction is not appealed, and 120-days after the conclusion of the appellate process if the conviction or sentence is directly appealed." *See* SUPPLEMENT TO APPLICANT'S REPLY, Docket #19. Applicant's position, however, is misguided.

The 120-day period discussed in *Lyons*, and provided for by rule at Colo.R.Crim.P. 35(b), "suspend[s] the finality of the original sentence for a period of 120 days for the limited purpose of either permitting the defendant to request a reduction of sentence or allowing the court to reduce the sentence on its own initiative." *People v. Fuqua*, 764 P.2d 56, 59 (Colo. 1988). For all other purposes, Applicant had 45 days after the entry of his judgment of conviction on resentencing to file notice of a direct appeal. *See* Colo.A.R. 4(b)(1). There is no evidence that Applicant filed a further appeal in this regard, and therefore, the 90-day time period for appeals to the United States Supreme Court does not extend the deadline. *See* SUP.CT.R. 13 (stating 90-day period applies only to decisions from the state court of last resort); *cf. Rhine v. Boone*, 182 F.3d 1153, 1155 (10th Cir. 1999) (holding 90-day period applies following a direct appeal of judgment of conviction). Accordingly, the record herein establishes that Applicant's conviction became final on or about April 7, 1996, and therefore, he must have filed his federal habeas corpus application on or before April 24, 1997, in order to avoid the AEDPA's statute of limitations. The Application in this case was not filed until September 13, 2005, which is a date well past the one-year limitations period. Before determining that the Application is time-barred, however, the Court must look to whether there is a basis upon which to toll any of the time which expired between the Applicant's conviction becoming final and the date of filing of his Application in this Court.

As noted previously, the AEDPA limitations period is tolled during the time in which a properly filed application for postconviction or collateral review is pending in the state courts. 28 U.S.C. § 2244(d)(2). Respondents contend, and the record demonstrates, that the Applicant's motion for postconviction relief under state law was not filed until August 20, 1998. EXHIBITS TO RESPONDENTS' ANSWER, Docket #8, Exh. L, p. 8. Applicant argues that a request for appointment of postconviction counsel which he made on June 13, 2006, is actually the initiating event for his postconviction proceedings and, therefore, the limitations period was tolled at that time. Applicant bases his argument on what he indicates was the method of operation by the state courts in this regard:

> Prior to June 23, 1997, the practice of Colorado district courts with respect to postconviction proceedings was to appoint counsel to investigate whether or not arguable merit existed for the court to hear a postconviction petition. The practice was to remedy several procedural problems the courts encountered in postconviction matters over the years. . . . By appointing counsel, the courts were able to reduce criminal defendants to one postconviction petition. In essence, the courts were appointing attorneys, upon there [sic] own motions or upon motion by defendants, to act as the court's fact-finder for whether or not a defendant had any arguable meriterious [sic] claims for postconviction relief. [citation omitted.] If the attorney did, he was to file a motion specify [sic] the grounds and litigate them on behalf of the defendant. If he didn't, he was to file a motion of such with the court.

REPLY, Docket #11, pp.2-3.

Further, relying on *Habteselassie v. Novak*, 209 F.3d 1208, 1210-11 (10th Cir. 2000), the Applicant contends that under the above-cited procedure, the state court treated his request for appointment of postconviction counsel as a motion for postconviction relief, thereby satisfying the filing requirement under 28 U.S.C. § 2244(d)(2). Respondents concede that Applicant filed a motion for appointment of postconviction counsel in 1996, but contend that this action did not qualify as a tolling motion under the AEDPA provisions.

8

In *Habteselassie*, the Court of Appeals for the Tenth Circuit was faced with defining what is meant by a "properly filed" habeas application under § 2244(d)(2). In setting forth their definition of the phrase, the federal appellate court determined that:

> We believe that a "properly filed" application is one filed according to the filing requirements for a motion for state post-conviction relief. These requirements may include: (1) the place and time of filing; (2) the payment or waiver of any required filing fees; (3) the obtaining of any necessary judicial authorizations that are conditions precedent to filing, such as satisfying any filing preconditions that may have been imposed on an abusive filer; and (4) other conditions precedent that the state may impose upon the filing of a post-conviction motion.

*Habteselassie*, 209 F.3d at 1210-11.

Applicant appears to argue that the appointment of counsel procedure he claims was used by the Colorado district courts prior to June 23, 1997, was a condition precedent to the filing of his postconviction motion which had to be satisfied for his motion to be properly filed under the AEDPA tolling provision. This argument fails for at least two reasons: First, Applicant cites to no authority that the state <u>required</u> representation by counsel before a state postconviction application could be filed. Conversely, there is also no evidence that the Applicant was precluded in any way from proceeding *pro se* in filing a request for postconviction relief, only that he was potentially better served by seeking appointment of counsel in his endeavors. Second, there is no federal or state constitutional right to counsel in postconviction proceedings. *See People v. Alexander*, 129 P.3d 1051, 1056 (Colo. Ct. App. 2005). While a state defendant has a "limited statutory right to counsel" in such proceedings, that right holds true only for postconviction remedies that have arguable merit. *People v. Duran*, 757 P.2d 1096, 1097 (Colo. Ct. App. 1988). Under Colorado law, the authority to appoint postconviction counsel is discretionary and not mandatory. *See People v. Breaman*, 939 P.2d 1348, 1351 (Colo. 1997). Finding that appointment of counsel proceedings are a condition

precedent to the filing of postconviction proceedings would improperly elevate a limited statutory right to a level of arguable constitutional significance, without authority for such a finding and in direct conflict with discretionary nature of such proceedings.

The language of the limitations statute is clear: only the time during which a properly filed application for postconviction or other collateral review is pending in the state courts will toll the limitations period.  Courts have agreed that to be viewed as an application for state post-conviction or other collateral review, a filing must set forth the grounds on which it is based, must state the relief desired, and must collaterally attack the relevant conviction or sentence.  *See Sibley v. Culliver*, 377 F.3d 1196, 1200 (11th Cir. 2004); *Voravongsa v. Wall*, 349 F.3d 1, 6 (1st Cir. 2003).  The application must seek review of the conviction or sentence under which the applicant is incarcerated for the tolling provisions of § 2244(d) to apply.  *See id.*; *see also Moore v. Cain*, 298 F.3d 361, 366-67 (5th Cir. 2002); *Johnson v. Lewis*, 310 F.Supp.2d 1121, 1125 (C.D. Cal. 2004).  "Not every filing by a criminal defendant meant to advance his challenge to a judgment of conviction amounts to an application for other collateral review of the judgment or claim."  *Rodriguez v. Spencer*, 412 F.3d 29, 36 (1st Cir. 2005).   The United States Supreme Court has held that a motion requesting postconviction counsel is not a properly filed application for § 2244(d) purposes, because it does not call for a decision on the merits.  *See Woodford v. Garceau*, 538 U.S. 202, 207 (2003).  Additionally, an application for relief must comply with all state procedural requirements in order to be properly filed. *Habteselassie*, 209 F.3d at 1210-11.  Under the parameters identified by the Applicant concerning the practice of Colorado district courts with respect to appointment of counsel in postconviction proceedings, a request for appointment of counsel would not qualify as a properly filed application for postconviction relief.  Under the Colorado postconviction procedure alleged by

the Applicant to be in place when he filed his motion for appointment of counsel, the purpose and intent of appointing legal counsel was to help in investigating and preparing an application.  Nothing in the record demonstrates that Applicant's request for appointment of counsel placed the merits of the claims he sought to raise before the state courts or was anything more than a request for assistance of counsel to prepare his postconviction application.

In *Habteselassie*, based on the record before it, the Tenth Circuit recognized that the Colorado courts treated the applicant's motion for "appointment of new counsel" as an application for state postconviction or other collateral review within the meaning of § 2244(d).  *Id*., 209 F.3d at 1213.  Applicant argues that the record in his case also establishes that the state district court did the same.  However, a notable difference between the *Habteselassie* case and the Applicant's situation is that in *Habteselassie* the record clearly reflected <u>and</u> the parties conceded that the state court treated the applicant's motion for counsel as a motion for postconviction relief.  *Id*.  There is no such concession or agreement on this issue by the parties in this case, and the record herein provides no evidence or well-pled facts to demonstrate that the state court treated Applicant's request for counsel as one for postconviction relief.   In his Supplement to Applicant's Reply, the Applicant cites to 4 motions filed by his postconviction counsel which he claims demonstrates that his motion for appointment of postconviction counsel was treated by the state court as a motion for postconviction relief.  SUPPLEMENT TO APPLICANT'S REPLY, Docket #19, p. 3 and  Exh. A-1, A-2, A-3 & A-4.  However, these materials merely evidence that the state court exercised its procedural discretion in appointing counsel to assist the Applicant.  Additionally, the observations regarding the posture or merit of the Applicant's case are those of postconviction counsel, and not the court.  Nothing contained within the record evidences a substantive opinion or ruling by the state court to show that

it treated the request for appointment of counsel as a request for state postconviction or other collateral review within the meaning of § 2244(d).  Accordingly, Applicant has provided no basis for a statutory tolling of the limitations period in this regard.

Applicant argues that if this Court finds that statutory tolling is unavailable to him, he be granted equitable tolling of the limitations period from the date of appointment of postconviction counsel on February 24, 1997.  SUPPLEMENT TO APPLICANT'S REPLY, Docket #19, p. 4.  In this circuit, equitable tolling is limited to "'rare and exceptional' circumstances." *Burger v. Scott*, 317 F.3d 1133, 1141 (10th Cir. 2003) (citing *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000)).

> Equitable tolling is appropriate, for example, when a prisoner is actually innocent, when an adversary's conduct - or other uncontrollable circumstances - prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period.

*Burger*, 317 F.3d at 1141 (citing *Gibson*).  However, equitable tolling is "only available when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control." *Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir. 2000).

First, Applicant argues that he has claimed actual innocence from the moment of his arrest. SUPPLEMENT TO APPLICANT'S REPLY, Docket #19, p. 12.  However, the definition of "actual innocence," taken from its common usage as an exception to the rule of procedural bar, requires a showing that there is new evidence, not present previously, that makes it "more likely than not that no reasonable juror" would have convicted the applicant.  *See Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see also Sellers v. Ward*, 135 F.3d 1333, 1338 (10th Cir. 1998).  Applicant has presented no new evidence supporting his alleged actual innocence.  His allegation of actual innocence is based on

the same arguments presented and rejected in the state courts.  Furthermore, Tenth Circuit authority provides that claims of actual innocence alone cannot serve to toll the limitations period.  *See Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998).  Applicant must also demonstrate that he pursued his claims diligently, but was prevented from a timely filing due to extraordinary circumstances.  *Id.*  Applicant cannot make such a demonstration.

Applicant attempts to establish extraordinary circumstances by arguing that it took over seven months for the state court to appoint counsel for him, that postconviction counsel could not file a formal motion until he had determined that arguable merit existed, and that  external factors such a delay in the receipt of trial transcripts, etc., precluded the filing of a timely state application.  Applicant also argues, in the alternative, that postconviction counsel failed to timely file a more formal postconviction pleading before the state court because he misunderstood the 1-year limitation established under § 2244(d)(1).  As discussed previously, however, there is no state or federal constitutional right to counsel in a state post-conviction action.  The need for postconviction counsel is only a typical "obstacle faced by many if not most habeas petitioners."  *Jihad v. Hvass,* 267 F.3d 803, 805-07 (8th Cir. 2001).  Attempts to obtain counsel are not considered to be the type of extraordinary circumstances that would act to toll the limitations period.  *See Beery v. Ault*, 312 F.3d 948, 951-52 (8th Cir. 2002); *Lookingbill v. Cockrell*, 293 F.3d 256, 260-61 (5th Cir. 2002); *Isaacs v. Head*, 300 F.3d 1232, 1238-39 n.1, 1245 (11th Cir. 2002).  Nothing precluded the Applicant from pursuing postconviction relief on his own when his conviction became final on or about April 7, 1996.  His choice to await the appointment of counsel prior to proceeding, and therefore also not seek production of trial transcripts and other materials on his own was a voluntary choice between options, and not an extraordinary circumstance.  Because there is no federal constitutional right to

13

postconviction counsel, alleged negligence on the part of such counsel cannot establish a basis for equitable tolling. *See Jones v. Kaiser*, 2001 WL 303527 (10th Cir. 2001) (noting the absence of a constitutional right to counsel in postconviction proceedings and finding counsel's alleged ineffective assistance was not sufficient to warrant equitable tolling); *see also Hankins v. Boone*, 2000 WL 972963 (10th Cir. 2000).

Finally, Applicant demonstrates that he diligently pursued appointment of postconviction counsel, but fails to demonstrate that he has diligently pursued his claims sufficient to warrant equitable tolling. Nothing in the record indicates that the Applicant was in any way precluded from seeking postconviction relief without the assistance of counsel. The record establishes that Applicant filed his request for counsel in June 1996, but made no substantive attempt to pursue his claims. Any ignorance of the legal basis for his claims is insufficient to establish grounds for equitable tolling. *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that ignorance of the law, even for an incarcerated pro se petitioner, generally, does not excuse prompt filing.") (citation and internal quotations omitted). It is apparent from the record that the Applicant was unaware of the statute of limitations for federal habeas applications. Lack of knowledge of the statute of limitations is also not sufficient to warrant equitable tolling. *See Miller*, 141 F.3d at 978.

Applicant has failed to show sufficient reason to compel this Court's exercise of equitable tolling power. For this reason, equitable tolling principles should not be applied. Because the Applicant cannot demonstrate that the limitations period was somehow tolled prior to the filing of his state postconviction motion, the Application in this Court must be deemed as untimely and dismissed in its entirety.

## II.    Procedural Bar.

Alternatively to asserting a defense under the AEDPA statute of limitations, the Respondents argue that except for Claims One, Four and Five of the Application, the remainder of Applicant's claims were not exhausted in the state courts and are now procedurally barred from review by the state courts. Respondents base their argument on the fact that while the Applicant may have arguably presented the claims he presents in this Court on appeal to the Colorado Court of Appeals, he did not present all of his claims in a discretionary petition for review in the Colorado Supreme Court. Applicant counters the Respondents' position by asserting that (1) his petition for certiorari to the Colorado Supreme Court sought to vacate the decision of the Colorado Court of Appeals, thereby implicitly requesting review of the entire decision and all claims considered therein; and (2) because review by the Colorado Supreme Court is discretionary, he is not required to petition for certiorari to exhaust his state court remedies. If a procedural default is still found, the Applicant argues that any fault for the failure to exhaust rests with counsel who failed to appropriately raise the claims, thereby establishing cause for the default.

Exhaustion of available and adequate state court remedies is a prerequisite to a habeas corpus applications in federal court. *Granberry v. Greer*, 481 U.S. 129 (1987); *Rose v. Lundy*, 455 U.S. 509 (1982); 28 U.S.C. § 2254(b).

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 120 L.Ed.2d 865 (1995) (per curiam) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim to each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

15

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted).

"Fair presentation of a prisoner's claim to the state courts means that the substance of the claim must be raised there." *Patton v. Mullin*, 425 F.3d 788, 809 n.7 (10th Cir. 2005). "The prisoner's allegations and supporting evidence must offer the state courts a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Id*. A state prisoner "does not 'fairly present' a federal claim to a state court if that court must read beyond a petition, a brief (or similar document) to find material that will alert it to the presence of such a claim." *Baldwin*, 541 U.S. at 32.

Here, the well-established federal habeas law cited above negates Applicant's argument that he was not required to seek review by the Colorado Supreme Court. Additionally, the record establishes that in his petition for certiorari on direct appeal, Applicant presented three claims: (1) whether the trial court erred in not permitted the defense to call an expert witness because of a late endorsement, (2) whether evidence of an old prior assault by the Applicant on a different victim was admissible, and (3) whether Applicant was denied effective assistance of counsel by the forced withdrawal of Attorney Perlet. *See* EXHIBITS TO RESPONDENTS' ANSWER, Docket #8, Exh. E. These claims arguably constitute Applicant's Claims One, Four and Five in this Court. When seeking review by the Colorado Supreme Court of the denial of Applicant's postconviction motion by the Colorado Court of Appeals, counsel simply raised issues concerning the procedures used in the Court of Appeals and did not address the substantive claims which had been presented. *Id.* at Exh. J. Applicant's argument that his broad and conclusory request for review of the Colorado Court of Appeals decision constituted presentation for review of all claims presented to that court is without merit or authority, and contrary to well-established federal habeas law. *See Baldwin*, 541 U.S. at 32.

16

If a habeas applicant has failed to raise a claim properly in the state courts, and no state judicial remedies are available to adjudicate the claim at the time the federal habeas application is filed, the applicant meets the technical requirements for exhaustion because no state remedies are available. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). Commonly known as the doctrine of procedural default, this tenet prevents applicants from evading the purpose of the exhaustion requirement by defaulting their state remedies and then seeking federal habeas relief. The procedural default doctrine ensures that a criminal defendant must give the state courts a full and fair opportunity to address and resolve the defendant's constitutional claims before resorting to federal court.

In *Coleman*, the United States Supreme Court said:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in fundamental miscarriage of justice.

*Id*. at 750. In some circumstances, a finding of procedural default requires that the federal court have before it an opinion from the state court which clearly states that its decision to deny relief to the applicant was based on separate, adequate and independent state procedural rule. However, procedural default also may be found when the applicant has failed to exhaust state court remedies and "the court to which [applicant] would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id*. at 735, n. 1.

Colorado's procedural rules now bar the Applicant from again appealing claims he has previously raised, and from raising new claims related to the criminal conviction at issue here. First, the Applicant pursued a direct appeal of his convictions through the Colorado Court of Appeals, and

17

his Petition for Certiorari was denied by the Colorado Supreme Court.  He may not file a second direct appeal of his conviction.  Second, Colorado's successive petition rule prevents the Applicant from raising new  issues in a second Rule 35(c) motion.  *See People v. Hubbard*, 519 P.2d 945, 948-49 (1974) (successive application rule).  Further, the period of limitations for a Rule 35(c) motion has expired.  COLO. REV. STAT. § 16-5-402(1) (period of limitations for Rule 35(c) motions).  The Applicant does not have any real prospect of obtaining relief in the Colorado state courts based on the claims other than Claims One, Four and Five that he asserts in his Application in this case.  Therefore, the majority of his claims are technically exhausted, but procedurally barred from review in these federal habeas proceedings.  *Coleman*, 501 U.S. at 729-30.

The Applicant can, however, overcome procedural default if he can demonstrate either (1) cause for and prejudice from the default, or (2) that not reaching his claims would result in a fundamental miscarriage of justice.  *Id*. at 749.  In this case, the Applicant can demonstrate neither exception.

By not including all of the direct appeal and postconviction claims that he argued in the trial court and/or the Colorado Court of Appeals in his certiorari requests, the Applicant effectively abandoned those claims.  With regard to his direct appeal, ineffective assistance of counsel can, in some circumstances, constitute cause for procedural default.  However, it must be presented to the state courts as an independent claim before it may be used to establish cause.  *See Murray v. Carrier*, 477 U.S. 478, 489 (1986); *see also Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  While the Applicant took issue with actions or inactions of counsel on direct appeal in his postconviction proceedings, he failed to articulate claim in this regard.  EXHIBITS TO RESPONDENTS' ANSWER, Docket #8, Exh. G, pp. 17-19.  No such claim was raised in his Petition for Writ of Certiorari to the

Colorado Supreme Court.  *Id.* at Exh. J. Additionally, Applicant cannot show cause based on an argument that postconviction appellate counsel either failed to present all claims or ignored his requests to present the claims.  As has been repeatedly stated herein, there is no constitutional right to counsel in collateral proceedings.  *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Therefore, a failure of post-conviction counsel resulting in procedural default "cannot constitute cause to excuse default in federal habeas."  *Coleman*, 501 U.S. at 757.  Further, the record does not demonstrate that a miscarriage of justice may result if this Court does not hear this claim.  To make such a showing, Applicant must demonstrate that a constitutional error has probably resulted in the conviction of one who is actually innocent.  *See Bousley v. United States*, 523 U.S. 614, 623 (1998).

> To be credible, such a claim requires [an applicant] to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Schlup*, 513 U.S. at 324.

No such evidence is apparent from the record.  Applicant argues that under the allegations set forth in his Claim Seven, he can establish the "new facts" necessary to satisfy this standard and that he has not previously been given the opportunity to develop a record in this regard.  *See* SUPPLEMENT TO APPLICANT'S REPLY, Docket #19, p. 13.  The AEDPA, however, restricts the Court's ability to grant  hearings to certain limited circumstances.  Section 2254(e)(2) provides that "[i]f the applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant" can satisfy one of the two exceptions listed in § 2254(e)(2)(A) and (B).  First, a habeas applicant must show that the claim relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the

Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)(i)-(ii); *Medlock v. Ward*, 200 F.3d 1314, 1323 (10th Cir. 2000). Second, an applicant must show that the facts underlying his claim would "establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B). This Court need not even reach the requirements of § 2254(e)(2)(B), because the Applicant has demonstrated no new rule of constitutional law and the record establishes that he had ample opportunity to develop the record in state court. Therefore, with the exercise of due diligence, Applicant could have discovered the factual predicate that he desires to develop in this Court. Specifically, the record demonstrates that Applicant filed numerous motions, requested and was granted various extensions of time in which to submit supplemental briefing, and was also granted an extensive postconviction hearing. *See* EXHIBITS TO RESPONDENTS' ANSWER, Docket #8, Exh. L. Applicant concedes that ". . . the state courts had ample opportunities to address the issue . . . ." APPLICANT'S MOTION FOR EVIDENTIARY HEARING PURSUANT TO RULE 8 OF THE RULES GOVERNING § 2254 CASES, Docket #17. The mere fact, without more, that the state courts may have made rulings contrary to the position of the Applicant, or declined to hear his position, does not establish grounds for an evidentiary hearing in this Court under the provisions of § 2254(e)(2). In light of this record, granting a hearing to the Applicant in this regard would be in complete contravention of the standards established by the AEDPA.

Applicant has procedurally defaulted his Claims Two, Three, Six, Seven, Eight, Nine, Ten, and Eleven, and the default cannot be excused. Accordingly, this Court cannot reach the merits of these claims, and they must be dismissed.

III.     **Remaining Claims.**

A.     **Standard of Review.**

In the course of reviewing state criminal convictions in federal habeas corpus proceedings,

a federal court does not sit as a super-state appellate court.  *See Estelle v. McGuire*, 502 U.S. 62, 67-

68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

"When a federal district court reviews a state prisoner's habeas [application] pursuant to 28 U.S.C.

§ 2254 it must decide whether the [applicant] is 'in custody in violation of the Constitution or laws

or treaties of the United States.'  The court does not review a judgment, but the lawfulness of the

[applicant's] custody *simpliciter*."  *Coleman v. Thompson*, 501 U.S. 722, 730 (1991).   The

exhaustion of state remedies requirement in federal habeas cases dictates that a state prisoner must

"give the state courts one full opportunity to resolve any constitutional issues by invoking one

complete round of the State's established appellate review process." *O'Sullivan* , 526 U.S. at 845.

Accordingly, based on denial of certiorari review by the Colorado Supreme Court in Applicant's case,

habeas review in this Court is concerned with the proceedings in the Colorado Court of Appeals

which was the final substantive proceedings in the state appellate review process.

The AEDPA applies to all federal habeas applications filed after the AEDPA's effective date

of April 24, 1996, regardless of when the state proceedings occurred.  *See Trice v. Ward*, 196 F.3d

1151, 1158 (10th Cir. 1999); *Moore v. Gibson*, 195 F.3d 1152, 1163 (10th Cir. 1999).   Under

AEDPA, an applicant is entitled to federal habeas relief only if he can establish that the state court

decision was "contrary to, or involved an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States," or was "based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.

§ 2254(d)(1)-(2); *see also Hale v. Gibson*, 227 F.3d 1298, 1309 (10th Cir. 2000).

As the Supreme Court recently stated:

A state-court decision is contrary to . . . clearly established precedents if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

*Brown v. Payton*,  544 U.S. 133, 125 S.Ct. 1432, 1438-39 (2005) (internal citations omitted).

"Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require awareness of [those] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). So, when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal standard, the reviewing court may presume an adjudication on the merits and apply AEDPA deference. *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005).

Factual findings made by the state trial and appellate courts are presumed correct, with the applicant having the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Darks v. Mullin*, 327 F.3d 1001, 1007 (10th Cir. 2003). "[W]hether a state court's decision was unreasonable must be assessed in light of the record [that court] had before it." *Holland v. Jackson*, 542 U.S. 649, 651-52 (2004) (*per curiam*) (citations omitted).

Even if the state court adjudication was contrary to or involved an unreasonable application of clearly established federal law, unless the error is a "structural defect[ ] in the constitution of the trial mechanism, which def[ies] analysis by harmless-error standards," *Brecht v. Abrahamson*, 507

U.S. 619, 629 (1993), the harmless error standard of *Brecht* and *O'Neal v. McAninch*, 513 U.S. 432 (1995), must be applied.  *See Herrera v. Lemaster*, 301 F.3d 1192, 1200 (10th Cir. 2002).  Under *Brecht,* habeas relief is not proper unless the error had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 623.  *O'Neal* addresses the situation where a court is in "grave doubt" about the likely effect of the error on the jury's verdict – that is, where "the matter is so evenly balanced that [the court] feels [itself] in virtual equipoise as to the harmlessness of the error."  *O'Neal*, 513 U.S. at 435.  In such a case, *O'Neal* instructs a court to treat the error "as if it had a substantial and injurious effect or influence in determining the jury's verdict."  *Id.* (quoting Brecht, 507 U.S. at 623).

### A.   Claim One.

In his first claim, the Applicant argues that his Sixth and Fourteen Amendment rights were violated by the trial court's exclusion of the expert testimony of Dr. Roger W. Shuy, an expert in linguistics, concerning Dr. Shuy's analysis of a 911 tape which recorded the sounds of voices and activity at the scene of the crime.  Dr. Shuy's testimony was excluded based on, among other things, its late disclosure in the trial proceedings and prejudice to the prosecution.

A criminal defendant's right to due process and compulsory process includes the right to present witnesses in his own defense.  *Washington v. Texas*, 388 U.S. 14, 18-19 (1967).  "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense . . . . This right is a fundamental element of due process of law."  *Id.* at 19.  This includes the right to have the jury hear the testimony a defendant's witnesses are called to give.  *See Rock v. Arkansas*, 483 U.S. 44, 55 (1987).  However, the Supreme Court has held that exclusion of a defense witness as a discovery sanction does not necessarily violate the constitution.  *Taylor v.*

*Illinois*, 484 U.S. 400, 412-16 (1988).  When a lesser sanction "would perpetuate rather than limit the prejudice to the State and the harm to the adversary process," preclusion of a witness is justified. *Id.* at 413; *see, also, United States v. Russell*, 109 F.3d 1503, 1509 (10th Cir. 1997) ("Excluding witnesses for failure to comply with discovery orders, if not an abuse of discretion, does not violate a defendant's Sixth Amendment right to compulsory process.").

Here, as to the Applicant's first claim, the Colorado Court of Appeals relied on the state case of *People v. Pronovost*, 773 P.2d 555 (Colo. 1989), as raised by the Applicant in his appellate briefing, and its precedent on the issue found in *People v. Hampton*, 696 P.2d 765 (Colo. 1985).  In *Pronovost*, the Colorado Supreme Court "established a mutifactor balancing test to determine whether a trial court has abused its discretion in excluding a defense expert because of late endorsement."  *See* EXHIBITS TO RESPONDENTS' ANSWER, Docket #8,  Exh. D.   Under *Pronovost*, the following factors are evaluated:

> (1) [T]he reason for and the degree of culpability associated with the late endorsement; (2) whether the late endorsement prejudiced the prosecution's opportunity effectively to prepare for trial; (3) whether events occurring subsequent to the late endorsement mitigated the prejudice to the prosecution; (4) whether there was a reasonable and less drastic alternative to the preclusion of the expert's testimony; and (5) any other relevant factors arising out of the circumstances of the case.

*Id.*

The state law standard applied by the court under *Pronovost* was "at least as favorable to [the Applicant] as the federal standard." *Harris*, 411 F.3d at 1196.  Accordingly, this Court views whether the decision on the claim was unreasonable under the AEDPA.  *See Torres v. Mullin*, 317 F.3d 1145, 1152 n.3 (10th Cir. 2003).

Nothing in the record demonstrates that the state appellate court reached a different result based on facts that were materially indistinguishable from a decision of the Supreme Court, nor did it apply the Court's precedents to the facts in an objectively unreasonable manner.  Applicant fails to identify any decision of the United States Supreme Court which holds, based on facts similar to those of the Applicant, that the exclusion of expert evidence as a sanction for untimely disclosure would violate the Sixth or Fourteenth Amendments to the United States Constitution under the facts which were present in this case.  Accordingly, the state court's decision was not legally unreasonable and habeas relief under § 2254(d)(1) is unavailable to the Applicant on this claim.

Viewing whether the state court's decision was an unreasonable determination of the facts in light of the evidence presented also demonstrates that federal habeas relief is not available to this Applicant.  A federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable.  *See Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001) (state court's determination of facts must be objectively unreasonable in light of evidence available to the state court); *Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000) (same standard of unreasonableness applies under subsections § 2254(d)(1) and § 2254(d)(2)).  Mere disagreement with the state court's determination, or even erroneous factfinding, is insufficient to grant relief if the court acted reasonably.  *Weaver*, 241 F.3d at 1030.

In this case, it was undisputed that Applicant's counsel did not learn "of the availability of expert assistance in identifying voice characteristics on tape recordings through linguistics" until the weekend before trial.  APPLICATION, Docket #1, p. 5(a).  On the first day of trial, counsel notified the trial court of this information and asked for funding to hire Dr. Shuy.  *Id*.  The court granted the

25

request, and "the following week Dr. Shuy's transcript of the 911-tape was tendered to the court and the prosecution." *Id.* Both the trial court and the Colorado Court of Appeals took into account that the late endorsement was not willful or done in bad faith, but had to balance that fact against the fact that there was no evidence or reason given as to why such an expert had not been obtained before trial so that proper notice could be given. *See* EXHIBITS TO RESPONDENTS' ANSWER, Docket #8, Exh. D, p. 3. Applicant's briefing on appeal had disclosed the reason as "[n]ot surprisingly, defense counsel was simply unaware of every body of scientific knowledge that was relevant to this particular case" and argued that the delay in locating experts was also partly the fault of the prosecution, because 2½ months prior to trial, defense counsel Terry Perlet was endorsed as a possible witness by the prosecution and thereafter was removed as lead counsel based on a conflict of interest. *Id.* at Exh. A, pp.11-12. However, the record before the appellate court demonstrates that the removal of Terry Perlet did not affect representation by Thomas Barnes, who was a part of the Applicant's original defense team. *Id.* at Exh. B, p. 20. Enhanced versions of the 911 tape and transcripts had been furnished to the prosecution and the defense seven or eight months before trial, and the prosecutor and the Applicant had agreed to the admission of the enhanced tapes. *Id.* at Exh. D, pp. 3-4. Additionally, the appellate court noted:

> The transcript of the tape created by the late-endorsed expert differed significantly from the previous versions. The trial court found the new version of the tape transcript to be "extremely problematic" because it "goes beyond the provision of technically providing the base information that's on the tape recording itself to the jury . . . and in effect, interprets . . . the words but also . . . who allegedly says the words." The trial court thus concluded, with record support, that the prosecution would suffer prejudice if the expert were allowed to testify.

*Id.* at Exh. D, p. 4.

The record also evidenced that while the prosecutor had identified a possible rebuttal witness, that witness' presence could not be secured for trial. *Id.* at Exh. D, p. 4. Applicant argued that a less drastic alternative would have been to continue the trial. *Id.* at Exh. A, p.13. However, a previous continuance had already been granted in the matter and the trial had already commenced. *Id.* at Exh. D, p. 5. Applicant has failed to present clear and convincing evidence to rebut the factual findings made by the state trial and appellate courts in this regard and, accordingly, these findings are presumed correct. While this Court may have weighed this evidence differently, and possibly have reached a different conclusion, that fact does not establish that the state court's ruling was unreasonable. The record shows that the factual findings which were made were not illogical to or disconnected from the evidence and the arguments which were presented.

The Applicant presents no evidence or well-pled facts to demonstrate that the court failed to consider or misunderstood the evidence presented to them in his case. Accordingly, the decision of the state court was not an objectively unreasonable determination of the facts based upon the evidence presented to it and review of Applicant's claim under § 2254(d)(2) is also precluded.

**B.    Claim Four**.

Applicant argues that his Sixth Amendment right to choice of counsel was violated by the endorsement of defense counsel Terry Perlet as a possible prosecution witness at trial. The facts surrounding this claim were set forth by the Applicant in his state appellate briefing as follows:

> The [Applicant] was represented until shortly before trial by Mr. Terry Perlet. The prosecution then endorsed a witness, Douglas Campbell. Mr. Campbell was a prisoner in the local jail who claimed that [Applicant] had confessed to him. Another prisoner, Timothy Knudson, then told Mr. Perlet that Campbell said he had made up the story of the confession in order to get a favorable deal from the prosecution in his own case. Mr. Perlet had represented Knudson in the past and was helping him to get

27

a reconsideration of his sentence.  Apparently, Mr. Perlet was helping Knudson <u>pro bono</u>.

The hypothetical scenario that arose was that Campbell would testify, Knudson would then testify, and Knudson would be impeached by the prosecution bringing out his relationship to Perlet.  Perhaps the jury would think Knudson was doing a favor for Perlet since he wasn't paying him.  Therefore, it was possible Perlet would be a witness.

EXHIBITS TO RESPONDENTS' ANSWER, Docket #8, Exh. A, p. 20-21.

A conflicts hearing was held in this regard, at which the Applicant was represented by a different attorney and which was presided over by a judge other than the trial judge. *Id.* at Exh. A., p. 21. Despite the Applicant's objection and waiver of any conflict, Mr. Perlet was allowed to withdraw as his counsel based upon the potential conflict involved in the matter. *Id.*

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defense." U.S. CONST. am. VI.  The Supreme Court has found that the right to counsel "was designed to assure fairness in the adversary criminal process." *Wheat v. United States*, 486 U.S. 153, 159 (1988).  In evaluating the right to counsel, the Court has stated that "the appropriate inquiry focuses on the adversarial process, not the accused's relationship with his lawyer as such." *Id.* (quoting *United States v. Cronic*, 466 U.S. 648, 657 n.21 (1984)).  The Court has also held that the right to counsel of one's own choice is not unlimited, however.  In *Wheat*, for example, the Court found that, despite Wheat's waiver of a conflict of interest, the trial court's refusal to permit Wheat to substitute his co-defendant's counsel for his own did not run afoul of the Sixth Amendment.  The Court concluded that the district court must be allowed latitude to refuse a defendant the representation of a specific attorney when a conflict exists or the potential for such a conflict exists. *Wheat*, 486 U.S. at 163. Further, the right to choice of counsel applies only

28

to persons who can afford to retain counsel. *See Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989).

On appeal, the Applicant attempted to draw a distinction in the issue at hand as a difference between an "ethical problem" faced by Mr. Perlet, which he argued he could waive, and a "conflict of interest." EXHIBITS TO RESPONDENTS' ANSWER, Docket #8, Exh. A, p. 20-21 and Exh. C, p. 8-9. In this case, however, the distinction makes no difference.  "[The] Courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160.  When a court finds that counsel has a conflict of interest, real or potential, it retains "substantial latitude to disqualify counsel, even where a defendant consents to representation."  *Id*. at 163.

Citing to state case law, the Colorado Court of Appeals reviewed the Applicant's arguments under an abuse of discretion standard. EXHIBITS TO RESPONDENTS' ANSWER, Docket #8, Exh. D, p. 10.  It is Applicant's burden to show that the state court's decision was objectively unreasonable, not merely that the state court incorrectly applied principles found in Supreme Court precedent.  *See Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002).  The Applicant has failed to satisfy his burden in this regard, because neither the Application nor the Reply nor the Supplement to Applicant's Reply provide a basis for finding that the state court unreasonably formulated or applied legal principles in light of Supreme Court precedent concerning this issue.  Additionally, neither the reasoning nor the result of the state-court decision contradicts the principles which have been announced by the Supreme Court.  Accordingly, federal habeas review under 28 U.S.C. § 2254(d)(1) is not available.

The state court conducted a hearing, at which a judge other than the trial judge presided and the Applicant was represented by independent counsel, to address the issue and determine whether

29

the Applicant could waive the conflict.   EXHIBITS TO RESPONDENTS' ANSWER, Docket #8, Exh. D, p. 10.   Upon review of the record in this regard, and taking into consideration the arguments of the parties on appeal, the Colorado Court of Appeals determined that the lower court did not abuse its discretion in permitting the Applicant's attorney to withdraw.   *Id*.   Consideration of the record on appeal by this Court indicates that the conclusion was not unreasonable.   Applicant cites to no evidence in the record, and none is apparent, which would unequivocally establish that the court abused its discretion, or that the findings upon which the court based its decision were unsupported. Applicant argues that because Mr. Perlet was ultimately not interviewed or called as a witness by the prosecution, that the record establishes that the prosecution "interjected a frivolous claim to deprive [him] of his right to counsel of choice."   APPLICATION, Docket #1, p. 6(i).   This argument does not assist the Applicant in establishing an objectively unreasonable determination of the facts because these are facts that were not available to the trial court and therefore could not be considered in the exercise of its discretion in allowing counsel to withdraw.   While this fact was made known to the state appellate court, its function was not that of an originating fact-finder, but as a court of review. Nothing exists in the record to demonstrate that the Colorado Court of Appeals failed to consider the arguments and evidence before it; the record establishes that court merely decided the issue contrary to position argued by the Applicant.   Dissatisfaction with a court's ruling does not establish grounds for federal habeas review under 28 U.S.C. § 2254(d).   Accordingly, this claim should be denied.

   **C.    Claim Five.**

   Under Claim Five of his Application, the Applicant argues that he was denied due process because the trial court admitted evidence of a prior assault he had committed five years earlier against a different victim.   In his direct appeal, however, Applicant claimed that the trial court had committed

an error.  EXHIBIT TO RESPONDENTS' ANSWER, Docket #8, Exh. A, p. 14-15.   Review of the briefing

in connection with Applicant's appeal in this regard reveals that the claim raised in the state court was

not the same as the one Applicant seeks to champion in this court.  *Compare Id*. at Exh. A, pp. 14-20

*with* APPLICATION, Docket #1, pp. 6(k).   There is only a passing reference to due process and the

U.S. Constitution made in Applicant's reply brief on appeal.  EXHIBIT TO RESPONDENTS' ANSWER,

Docket #8, Exh C, p. 7.   However, only issues raised in the Applicant's opening brief were properly

before the state appellate court.   Both federal and Colorado state courts have determined that a claim

raised in a reply brief is not properly before the court for consideration.   *See Codner v. United States*,

17 F.3d 1331, 1332 n.2 (10th Cir. 1994) (stating that an issue raised for the first time in a reply brief

is waived); *People v. Czemerynski*, 786 P.2d 1100 (Colo. 1990) (issue raised for the first time in a

reply brief is not properly before an appellate court).   The Applicant's primary briefing on appeal fails

to properly raise the issue of how the admission of the prior crime violated his right to a fair trial or

his due process rights or any other right protected under the federal constitution.   Instead, the briefing

focuses on and argues that admission of the prior criminal acts was error and highly prejudicial

pursuant to state case law and Colo. R. Evid. 404(b).   Whether or not the finding of the state courts

complied with state law is irrelevant to this Court's analysis of Applicant's claim.   Errors of state law

do not provide grounds for federal habeas relief.   *See Estelle*, 502 U.S. at 67-68.   The briefing makes

only a cursory reference, without any citation, to due process under the U.S. Constitution.

In order to allow the state courts the opportunity to act on or correct the violations alleged,

the Applicant must do more than just invoke the magic words "fair trial," or "due process," or make

only cursory citation to the appropriate constitutional amendments.   He must provide legal theory

explaining how the admission of the prior criminal acts violated a particular federal constitutional

rights.  *See, e.g., Anderson v. Harliss*, 459 U.S. 4, 7-8 (1982) (claim on direct appeal that jury instruction was reversible error did not fairly present due process challenge to instruction for habeas exhaustion purposes); *Picard v. Connor*, 404 U.S. 270, 276-77 (1971) (holding, in pre-AEDPA case, habeas applicant failed to fairly present federal claim to state court where, despite presenting all necessary facts, applicant failed to assert specific argument that he later tried to raise in federal court); *see, also, Thomas v. Gibson*, 218 F.3d 1213, 1221 n. 6 (10th Cir. 2000) (holding applicant's general state court claim was insufficient to exhaust his later, more specific federal habeas claim).  Applicant failed to do so in his direct appeal to the state courts and, therefore, this claim is unexhausted. However, because the claim is without merit, this Court may deny it without regard to the exhaustion issue.  *See Moore v. Schoeman*, 288 F.3d 1231, 1232 (10th Cir. 2002).

In federal habeas proceedings, this Court need not concern itself with whether a state procedural or evidentiary rule has been violated, but only whether the admission of such evidence violated the United States Constitution.  *See Estelle*, 502 U.S. at 67.  Even if the evidence was improperly admitted, it is harmless for constitutional purposes unless the error had a "substantial and injurious effect or influence" on the jury's deliberations and verdict.  *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  The Applicant must establish that the error "resulted in actual prejudice."  *Id.* A state court's evidentiary ruling is not questioned unless the admission of the evidence so fatally infected the proceedings so as to render them fundamentally unfair.  *See Williamson v. Ward*, 110 F.3d 1508, 1522 (10th Cir. 1997).  "[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements," when reviewing a state court evidentiary ruling for purposes of federal habeas relief, a federal court must "tread gingerly" and exercise "considerable self-restraint."  *United States v. Rivera*, 900 F.2d 1462, 1477 (10th Cir. 1990).

Nothing in the record reflects that the state court ruling allowing admission of the prior criminal act into evidence was constitutionally infirm, or that the jury used the evidence for an improper purpose, or that an instruction which was given directed the jury to misuse the evidence. There is a rational inference of Applicant's guilt, that is not constitutionally impermissible, which the jury could draw from the challenged evidence.  The admitted evidence was not the sole evidence of Applicant's guilt before the jury for consideration, and the Applicant has failed to demonstrate that the results of the trial could have been different if the alleged error had not occurred. The record contains no evidence that the Applicant did not have fair notice of the State's intended use of this evidence, or that he did not have an opportunity to contest it or prepare a defense against it. Accordingly, there is simply no federal constitutional basis for a finding that admission of the evidence rendered the proceedings fundamentally unfair.

The Applicant is not entitled to habeas relief under the arguments raised in Claim Five of his Application, and the same should be denied.

## <u>CONCLUSION</u>

As the discussion above demonstrates, Applicant is not entitled to relief under 28 U.S.C. § 2254.  Pursuant to Rule 8 of the rules governing section 2254 proceedings, no evidentiary hearing is required.

Based upon the foregoing analysis, and the entire record herein, I hereby **recommend** that District Judge Phillip S. Figa **deny** the Application [Filed September 13, 2005; Docket #1] and that this case be dismissed with prejudice.

Dated at Denver, Colorado, this 9th day of August, 2006.

BY THE COURT:

 s/ Michael E. Hegarty

Michael E. Hegarty
United States Magistrate Judge